The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Warren M. WOELLHAF, Defendant–
Appellant.

No. 00CA2351.

Colorado Court of Appeals,
Div. V.

June 19, 2003.

As Modified on Denial of Rehearing
Aug. 28, 2003.

Certiorari Granted March 22, 2004.*

* Justice BENDER would grant as to the following issue:

Whether defendant's due process rights to notice of the charges against him and due process rights to a fair trial were violated, when (1) the trial court denied a bill of particulars and failed to required the prosecution to elect, (2) the defendant was led to believe, inaccurately, from the generic nature of the charges filed and representations by the prosecutor, that he was being prosecuted for offenses that happened on separate dates, and (3) the defendant was thereby prevented from effectively presenting a defense.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Warren M. Woellhaf, appeals the judgment of conviction entered upon jury verdicts finding him guilty of four counts of sexual assault on a child pattern, four counts of sexual assault on a child by one in a position of trust-pattern, and one count of aggravated incest. Defendant also appeals the sentences imposed upon those convictions. We affirm in part, vacate in part, and remand for further proceedings.

When she was five years old, defendant's daughter told her foster mother that defendant had subjected her to sexual contact while she was living with him and her mother at a motel. In the investigation that followed, a social services caseworker and a child psychologist interviewed the victim and recorded the interviews on videotape.

During the interviews, the victim identified various acts of sexual contact, stating that they had happened ten times. However, because of her age, she was unable to list dates or particular times that the abuse had occurred. The time frame for the asserted acts covered a one-month period when the victim resided with her parents at the motel.

At trial, following its case-in-chief and after defendant had moved for judgment of acquittal, the prosecution elected and specified the sexual acts that supported each of the four sexual assault counts, reflecting each of the four particular types of sexual contact that the victim had identified. These were penile penetration, digital penetration, the rubbing of lotion on her vagina, and ejaculation on her stomach. The prosecutor specified that each of the assault-pattern counts and position of trust pattern counts would correspond with the four sexual acts specified by the victim.

Defendant was convicted on all counts. The court sentenced him to an aggregate of forty-eight years in the custody of the Department of Corrections: twelve years for each sexual assault on a child pattern count, to be served consecutively, and twelve years on each remaining count, to be served concurrently.

This appeal followed.

## I.

Defendant was charged with violating § 18–3–405(1), C.R.S.2002, which proscribes sexual assault on a child, and violating § 18–3–405.3(1), C.R.S.2002, which prohibits sexual assault on a child by one in a position of trust. He first contends that these charges, which were all identically worded in the information and alleged as four separate violations of these two statutes, were multiplicitous, because the jury was permitted to conclude that the offenses occurred during a single criminal episode. Specifically, defendant argues that because all of the particular types of sexual contact alleged in the counts could have occurred during one incident, he essentially was convicted of the same crime four times for each involved statute, thus violating the constitutional pro-

hibition against double jeopardy. We disagree.

■ As relevant here, the state and federal Double Jeopardy Clauses protect individuals against multiple punishments for the same offense. *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *Deutschendorf v. People,* 920 P.2d 53 (Colo.1996).

Multiplicity is the charging of the same offense in more than one count. It is considered a pleading defect and thus is not fatal to an indictment or information. However, one vice of multiplicity is that it may lead to multiple convictions and sentences for the same offense. C. Wright, *Federal Practice and Procedure: Criminal 2d* § 142 (1982 & 1987 Supp.); *see People v. Borghesi,* 66 P.3d 93 (Colo.2003).

■ The established test for determining whether two offenses are sufficiently distinguishable to allow successive prosecutions for separate statutory offenses is whether "each [statutory] provision requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

■ However, when, as here, multiple violations of the same statute are involved, the determination of whether double jeopardy bars prosecution for the same statutory offense involves a different analysis. The court must examine the scope of prosecution authorized by the statutory proscription and then the factual components of each prosecution and the evidence in support thereof. *See Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *People v. Williams,* 651 P.2d 899 (Colo.1982); *Brown v. State,* 311 Md. 426, 535 A.2d 485 (1988).

### A.

■ The scope of prosecution is set by determining the legislatively prescribed "allowable unit of prosecution." That prescription "determines the scope of protection offered by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this [legislative] choice." *People v. Williams, supra,* 651 P.2d at 903 (quoting *Sanabria v. United States, supra,* 437 U.S. at 69–70, 98 S.Ct. at 2181–82, 57 L.Ed.2d at 57).

■ In determining the allowable unit of prosecution, we examine whether a statute proscribes a continuous course of conduct or prohibits specific acts. *People v. Williams, supra.* As the Supreme Court stated in *Blockburger v. United States, supra,* 284 U.S. at 302, 52 S.Ct. at 181, 76 L.Ed. at 306 (quoting *Wharton's Criminal Law,* § 34 n. 3 (11th ed.)), "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty." The *Blockburger* Court, in holding that two narcotic sales constituted separate acts even though made to the same person, contrasted that determination with the case of *Ex parte Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887), which held that the offense of cohabiting with more than one woman was a continuous offense, because it "had duration" and did not consist of an isolated act. The distinction between the types of offenses, said the Court, again quoting *Wharton's,* is, "[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *See also Bustamante v. People,* 136 Colo. 362, 317 P.2d 885 (1957)(if a violation of law is not continuous in its nature, separate indictments or informations may be maintained for each violation; a distinct repetition of a prohibited act, even on the same day, may constitute a second offense and incur an additional penalty).

Hence, the particular act referred to in the statute at issue is a determining factor. Whether that act is of a discrete or continuing nature is critical. *See Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)(statute proscribing assault supported only one conviction where a single shot wounded two officers); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed.

905 (1955)(statute proscribing knowingly transporting any woman or girl for an immoral purpose held to support only one conviction for simultaneously transporting two women because the act of transportation was a single one); *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915)(defendant properly convicted of six violations of a statute providing that "[w]hoever shall tear, cut, or otherwise injure any mail bag ... shall be fined," even though he cut the six mail bags during the same criminal episode).

■ Here, pursuant to § 18–3–405(1), a person commits the crime of sexual assault on a child whenever he or she "knowingly subjects another not his or her spouse to any sexual contact ... if the victim is less than fifteen years of age and the actor is at least four years older than the victim." Under § 18–3–405.3(1), a person commits the crime of sexual assault on a child by one in a position of trust whenever he or she "knowingly subjects another not his or her spouse to any sexual contact ... if the victim is a child less than eighteen years of age and the actor committing the offense is in a position of trust with respect to the victim."

Both statutes criminalize the act of subjecting another to "any sexual contact," which is defined, as relevant here, as the "knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim." Section 18–3–401(4), C.R.S.2002. "Intimate parts" means "the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person." Section 18–3–401(2), C.R.S. 2002.

Because of the disjunctive "or" used in each definitional component of the statute, and because both statutes criminalize "any" prohibited contact, we read the proscription against "sexual contact" to apply to each act of knowingly touching the described intimate parts of the body. Thus, each instance of contact with the described part of the anatomy constitutes an allowable unit of prosecution and a separate violation of the statute. It does not matter that the acts of touching all occur within the same incident.

■ Each knowing act of touching must, however, be different, distinct, or factually separate. *See Blockburger v. United States, supra; Sanchez–Rengifo v. United States,* 815 A.2d 351 (D.C.2002). Touching and charges based thereon are different, distinct, or factually separate in fact if, for example, they are separated in time, place, or manner, if they require separate acts of volition, or if they are otherwise of a significantly different nature. *See State v. Anderson,* 219 Wis.2d 739, 580 N.W.2d 329 (1998). Thus, distinct, separately chargeable crimes are not necessarily committed when a person commits an act of sexual contact, such as penile penetration numerous times during the course of a single, unlawful act of sexual intercourse. Such a determination turns on the second part of the analysis under *People v. Williams, supra,* concerning the factual components of each prosecution and the evidence in support thereof.

The rationale for this result is obvious. If each separate, different, or distinct act were not a separate offense, a person who has committed one sexual assault upon a victim could commit with impunity many other acts during the same encounter, and the commission of one act would insulate the perpetrator from further criminal liability for any additional acts of the same character perpetrated on the same victim in the same encounter. Such a result defies rationality. *See State v. Frazier,* 185 Conn. 211, 440 A.2d 916 (1981)(each separate act of forcible sexual intercourse constitutes a separate crime; a different view would allow a person who has committed one sexual assault to commit with impunity many other such acts during the same encounter); *State v. Caprio,* 85 Hawai'i 92, 937 P.2d 933 (App.1997)(holding that, because sexual assault was not a continuous offense, defendant's convictions on five counts, each of which was based on a separate and different type of contact occurring during a single incident, did not violate statutory provision prohibiting conviction for more than one offense when offense is defined as a continuing course of conduct).

This result is consistent with the analysis of similar statutes and resolution of the issue by other courts that have faced the question.

*See Loeblein v. Dormire*, 229 F.3d 724 (8th Cir.2000)(sexual assault under Missouri law is not inherently a continuous crime, because any penetration, however brief, suffices to meet the definition); *State v. Arceo*, 84 Hawai'i 1, 928 P.2d 843 (1996)(sexual assault is not a continuing offense; each distinct act constitutes a separate offense); *State v. Horswill*, 75 Haw. 152, 857 P.2d 579 (1993)(each act constituting a sexual assault is punishable as a separate and distinct offense); *Cooksey v. State*, 359 Md. 1, 752 A.2d 606 (2000)(statute defining second degree sexual offense as engaging in "a sexual act" with another person and statute defining third degree sexual offense as engaging in "sexual contact" were not continuing offenses; they were committed when the proscribed acts occurred); *State v. Boozer*, 304 Md. 98, 497 A.2d 1129 (1985)(separate acts resulting in separate insults to the person of the victim may be separately charged and punished even though they occur in very close proximity to each other and even though they are part of a single criminal episode or transaction); *State v. Wilkins*, 872 S.W.2d 142 (Mo.Ct.App.1994)(where there is sexual contact with various parts of the body of the victim, each represents a separate and distinct offense, even though they arose from the same set of circumstances or same transaction); *State v. Williams*, 105 N.M. 214, 730 P.2d 1196 (N.M.Ct.App.1986)(statute prohibiting sexual contact interpreted to protect victim from intrusions to each enumerated body part; therefore separate punishments sustainable where evidence shows distinctly separate touchings to the different parts); *State v. Suarez*, 736 P.2d 1040 (Utah Ct.App.1987)(separate acts of placing mouth on breast and hand on vagina constituted separate offenses, even though charged under same statute); *State v. Rummer*, 189 W.Va. 369, 432 S.E.2d 39 (1993)(statute prohibiting sexual contact violated twice when defendant touched two prohibited areas of victim's body during same episode); *Frenzel v. State*, 938 P.2d 867 (Wyo.1997)(individual acts of sexual intrusion are prohibited by statute); *Parker v. State*, 882 P.2d 1225 (Wyo.1994)(legislature intended to define sexual intercourse, fellatio, and other acts of sexual intrusion as separate and distinct crimes); *Baum v. State*, 745 P.2d 877 (Wyo.1987)(separate and distinct acts of sexual intrusion, even those separated in time only by a matter of seconds, can properly be punished as separate crimes without violating principles of double jeopardy); *see also State v. Griffin*, 148 Ariz. 82, 713 P.2d 283 (1986)(rejecting double jeopardy claim where each of four different kinds of sexual contact was performed in an entirely different manner, was independent of the others, and was completed prior to the beginning of the next act, even though committed within a relatively short time span); *State v. Frazier, supra* (each separate act of sexual intercourse constitutes a separate crime); *State v. Patch*, 135 N.H. 127, 599 A.2d 1243 (1991)(each act of sexual contact constitutes a separate felonious assault); *State v. Sauceda*, 168 Wis.2d 486, 485 N.W.2d 1 (1992)(violation by commission of any different type of sexual assault does not immunize a defendant from violating the same or any other subsections during the course of sexual misconduct).

### B.

We turn next to the factual components of the prosecution and the evidence offered.

■ Here, the prosecution specified and presented evidence upon four different types of sexual contact for the sexual assault charges: penile penetration; digital penetration; rubbing lotion on the vagina; and ejaculation on the stomach. Defendant was also charged with one corresponding position of trust count for each type of sexual contact.

Each instance of sexual contact was distinct, different, and factually separate. Each required a separate volitional act and was of a different nature. Each offense was necessarily complete when the particular sexual contact occurred, regardless of whether or when other sexual contacts occurred. Therefore, each constituted a separate offense.

Accordingly, we conclude that defendant's convictions on four separate counts of sexual assault on a child and four separate counts of sexual assault on a child by one in a position of trust, based on different types of sexual contact specified and proved here, do not violate the constitutional prohibition against

double jeopardy. It therefore follows that defendant could not and did not receive more than one sentence for each single offense. Thus, the charges were not multiplicitous. *See People v. Martinez*, 36 P.3d 154 (Colo.App.2001)(defendant correctly charged with two counts of second degree sexual assault on the same victim on the same day when the offenses were separate and distinct and required proof of different facts to establish their elements).

## II.

Defendant next contends that the convictions for pattern of abuse enhancements must be reversed because, under the jury instructions given and the evidence presented, the jury could have found that all of the sexual contacts occurred during the same episode. We agree.

■ Initially, we note that a plain error standard of review applies here because defendant did not object in the trial court. Plain error occurs when, after a review of the entire record, an appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Bogdanov v. People*, 941 P.2d 247 (Colo.1997).

Under § 18–3–405(2), C.R.S.2002, sexual assault on a child is a class 4 felony, but becomes a class 3 felony if:

(d) The actor commits the offense as a part of a pattern of sexual abuse.... No specific date or time must be alleged for the pattern of sexual abuse; except that the acts constituting the pattern of sexual abuse must have been committed within ten years prior to or at any time after the offense charged in the information or indictment. The offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child necessary to form a pattern of sexual abuse as defined in section 18–3–401(2.5).

Section 18–3–401(2.5), C.R.S.2002, defines a "pattern of sexual abuse" as "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim."

As we have determined above, multiple sexual contacts occurring during one episode each may constitute an offense subject to separate prosecution and punishment, depending upon the facts of the case. However, we must now determine whether multiple sexual contacts occurring during one sexual assault episode may be punished as a pattern of abuse. This determination turns on whether the "two or more incidents of sexual contact" specified in § 18–3–401(2.5) as constituting a pattern means something different from "acts constituting the pattern of sexual abuse" in § 18–3–405(2)(d).

■ In construing a statute, we must ascertain and effectuate the legislative intent, which is to be discerned, when possible, from the plain and ordinary meaning of the statutory language. *People v. Longoria*, 862 P.2d 266 (Colo.1993). Constructions that defeat the obvious legislative intent should be avoided, and, when possible, a statute should be interpreted so as to give consistent and sensible effect to all its parts. *People v. Dist. Court*, 713 P.2d 918 (Colo.1986). We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Drake*, 983 P.2d 135 (Colo. App.1999). We must endeavor to give effect to each word in a statute. *City of Florence v. Bd. of Waterworks*, 793 P.2d 148 (Colo. 1990).

Defendant argues that "incident" means something different from "act," noting that the General Assembly has used those words separately in the statutes. The People read the words as synonyms, noting that the General Assembly used the words "offense[s]," "acts," and "incidents" within the same statutory provision. We agree with defendant.

■ The word "incident" can mean not only a separate unit of experience, but also an occurrence taking place as part of a larger continuum or a happening or related group of happenings subordinate to a main plot. Hence, an incident may logically include a

series of acts committed in close proximity or a chain of events forming a part of a schematic whole. *See People v. Beyer*, 768 P.2d 746 (Colo.App.1988). However, to construe "incident" as used in § 18–3–401(2.5) as synonymous with "act" would essentially render the pattern of abuse enhancement meaningless or absurd because a pattern always would be established in every sexual assault in which there is more than one sexual contact. Such an interpretation contradicts the General Assembly's purpose in enacting the statute to punish more severely the person who commits numerous sexual assaults on a child over a period of time. *See People v. Longoria, supra* (General Assembly's passage of the pattern of abuse sentence enhancer was part of an effort to distinguish the perpetrator who commits one offense from the person who commits numerous sexual assaults on a child; pattern definition provides an intelligent standard for permitting a rational distinction between a pattern of sexual abuse and one instance of sexual assault on a child).

For these reasons, we conclude that the phrase "two or more incidents of sexual contact" in the definition of pattern of abuse means that the sexual contacts must occur during distinct episodes of sexual assault and be separated by time or an intervening event. *See State v. Fortier*, 146 N.H. 784, 780 A.2d 1243 (2001)(pattern of sexual abuse statute requiring commission of at least two acts of sexual assault within prescribed period criminalizes a continuing course of sexual assaults over a period of time, not a single incident).

 Here, the jury instruction defining pattern of abuse was phrased in the statutory language requiring the jury to find that defendant committed two or more incidents of sexual contact with the victim. An instruction that tracks the language of a statute is ordinarily sufficient. *People v. James*, 40 P.3d 36 (Colo.App.2001). Further, absent evidence to the contrary, we presume that a jury follows the trial court's instructions. *People v. Harlan*, 8 P.3d 448 (Colo. 2000).

However, the verdict forms employed for the sexual assault on a child-pattern counts and the sexual assault-position of trust counts allowed the jurors to check a box to make the following pattern finding:

> We, the jury, unanimously find, beyond a reasonable doubt, that the defendant committed two or more acts of sexual contact with the victim described by the evidence between August 16, 1998 and September 16, 1998. The jurors unanimously find that the same two or more acts have been proven beyond a reasonable doubt.

Thus, the verdict form allowed a pattern finding for two or more acts, not two or more incidents. In addition, during closing arguments, the prosecutor told the jury:

> If you believe that two—at least two of these different types of sexual acts took place, there's a pattern. Two or higher is a pattern. If you were to find that one out of those four happened, and only one, then there's no pattern. After he touches her twice, he's committed a pattern of sexual abuse with that second contact.

While defendant did not object to the prosecutor's statement, it was, nevertheless, a misstatement of the law because it invited the jury to find defendant guilty of the pattern of abuse enhancements based on *any two sexual acts*, not *any two separate incidents* of sexual contact.

Hence, while the jury was properly instructed that a pattern of abuse meant the commission of two or more incidents, it was not instructed to find that the sexual acts occurred during separate incidents. And the verdict form and the prosecutor's argument permitted the jury to equate any two acts with two separate incidents. Consequently, as the People acknowledge, we have no way of knowing how many incidents of sexual contact the jury found to have occurred.

We conclude that the prosecutor's statement during closing arguments, when coupled with the jury verdict form and the fact that the victim was unable to identify particular dates or occasions of the sexual abuse, undermined the fundamental fairness of the trial as to the pattern of abuse counts and, therefore, constituted plain error. *See People v. Garcia*, 1 P.3d 214 (Colo.App.1999), *aff'd*, 28 P.3d 340 (Colo.2001).

Consequently, we must vacate the pattern enhancements on the eight sexual assault counts. However, this determination does not affect the findings of guilt as to those eight counts, but merely affects their enhancement.

## III.

Defendant contends that the trial court erroneously concluded that the crime of violence sentencing provisions found in § 18–1.3–406, C.R.S.2002, required consecutive sentences for the four separate counts of sexual assault on a child. Specifically, he argues that because each particular sexual act could have occurred during separate incidents, that statute was not applicable and, thus, the court had discretion in deciding whether to impose consecutive sentences. We agree.

■■ Section 18–1.3–406 requires that a person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced so that sentences are served consecutively rather than concurrently.

We note that, on appeal, both the People and defendant take positions on this issue that contradict their stated positions concerning "incidents" of sexual contact as noted above. Nevertheless, it is undisputed that the trial court imposed consecutive sentences because it believed, as did the parties, that § 18–1.3–406(1)(a), C.R.S.2002, applied to defendant's convictions and that consecutive sentencing was mandatory.

However, based on the record before us, and as the People acknowledge, it cannot be discerned whether the acts of sexual contact for which defendant was convicted occurred during one incident or multiple incidents. Because we cannot determine whether the crimes arose from one or more than one incident, the consecutive sentences must be vacated. Nevertheless, on remand, the court may exercise its discretion to sentence defendant to consecutive sentences, or it may impose concurrent sentences.

## IV.

Defendant next contends that the trial court abused its discretion in denying his challenge for cause to a prospective juror. We disagree.

■■■ In reviewing a trial court's ruling on a challenge for cause to a prospective juror, we must determine whether the trial court abused its discretion. This standard gives deference to the trial court's assessment of the credibility of a prospective juror's responses, recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and serves to discourage an appellate court from second-guessing those judgments based on a cold record. *Carrillo v. People,* 974 P.2d 478 (Colo.1999).

■■ It is within the trial court's prerogative to give considerable weight to a potential juror's statement that he or she can fairly and impartially serve on the case. If the trial court is satisfied that a potential juror will render a fair and impartial verdict according to the law and the evidence submitted at trial, that person should not be disqualified. *People v. Sandoval,* 733 P.2d 319 (Colo.1987).

■■ Here, the prospective juror indicated on her questionnaire that she had previously worked with child sexual assault victims. During voir dire, she initially expressed some doubt as to defendant's innocence. However, when questioned further, she indicated that she would try to put her biases aside and would want to listen to the evidence. She also told the court that she thought she could be fair.

Defense counsel challenged this juror for cause, and the court denied the challenge, finding that, based on all of the statements made by this juror, she could be fair and objective.

In light of the juror's responses during voir dire, we conclude that the trial court was justified in determining that this juror would follow its directions and render a fair and impartial verdict. Hence, we perceive no abuse of discretion in the court's decision to deny defendant's challenge for cause.

## V.

Defendant contends that the trial court violated his due process rights by denying his request for a bill of particulars and by not requiring the prosecution to specify before trial which incident supported each charge. We disagree.

■ A bill of particulars is intended to enable the defendant to prepare a defense in cases where the information, although sufficient to advise the defendant of the charges raised, is nonetheless so indefinite that it does not afford the defendant a fair opportunity to procure witnesses and prepare for trial. *Erickson v. People*, 951 P.2d 919 (Colo. 1998).

■ The decision to grant or deny a request for a bill of particulars is vested in the sound discretion of the trial court, and its ruling will not be disturbed on review absent an abuse of that discretion. *People v. Laurson*, 15 P.3d 791 (Colo.App.2000); *People v. Atencio*, 780 P.2d 46 (Colo.App.1989). The trial court abuses its discretion in this regard only if its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Mandez*, 997 P.2d 1254 (Colo.App.1999).

■ Here, defendant filed a request for a bill of particulars, alleging that discovery had not provided enough details about the nature of the sexual contact or a specific location and date for each count. The prosecution responded that it had provided defendant with all the evidence it intended to present at trial, including the videotape and the victim's statements in which she described the types of sexual contact. The prosecutor indicated no more information was available.

Defendant was well aware that the victim could not differentiate particular dates or occasions on which she said the abuse occurred, and he further knew that the original charges specified a one-month period during which the crimes were alleged to have occurred and that they all had occurred at a motel.

Because the videotape contained all the evidence the prosecution had describing defendant's conduct, a bill of particulars would not have aided defendant in preparing his

defense. *See Thomas v. People*, 803 P.2d 144 (Colo.1990)(in most instances, defendant can obtain adequate information to prepare a defense through the charging document, the preliminary hearing, and the discovery process). Thus, the trial court did not abuse its discretion in denying defendant's request.

Nevertheless, defendant contends that he was denied a fair trial because the prosecution did not specify the particular acts on which it was going to base the charges until after presentation of its case-in-chief. We reject this contention.

There is no requirement that the prosecution elect specific incidents before the conclusion of its case-in-chief. *See Thomas v. People, supra.*

## VI.

Defendant asserts that the trial court engaged in behavior that could be construed as sympathetic to the victim and thus denied him a fair trial. We reject this contention.

■ Trial courts are accorded broad discretion to regulate courtroom conduct and to preserve order during judicial proceedings. *Wilkerson v. Dist. Court*, 925 P.2d 1373 (Colo.1996).

■ Here, the trial court allowed the victim to testify from a chair that was located closer to the jury than the witness stand so that the jury could hear her better. When the jury was brought into the courtroom, the court instructed the jurors that the seating arrangements should not affect the way in which they viewed the victim's testimony.

In the absence of evidence to the contrary, the jury is presumed to have heeded the trial court's instructions. *People v. Harlan, supra.* Consequently, we perceive no abuse of discretion in the court's decision to allow the victim to sit closer to the jury.

Similarly, we reject defendant's contention that he was denied a fair trial based on the court's comment to the victim that she was "like a t.v. star" because she used a microphone during her testimony and the prosecutor's rejoinder that she was "like Britney Spears." When viewed in the context of the trial setting, these comments, while inadvisa-

ble, were clearly attempts to assuage the victim's fear in testifying and were not comments on her credibility. Accordingly, we perceive no abuse of discretion.

## VII.

Defendant contends, the People concede, and we agree that the trial court erred in imposing a period of mandatory parole.

A person convicted of a sexual offense committed after July 1, 1996, but before November 1, 1998, is subject to a period of discretionary parole, not longer than the remainder of the maximum sentence of incarceration imposed by the court. *People v. Cooper,* 27 P.3d 348 (Colo.2001).

Here, all the counts were based on acts alleged to have occurred on or between August 16 and September 16, 1998. Accordingly, we must remand the case to the trial court to amend the mittimus to reflect that defendant is subject to a period of discretionary parole, not mandatory parole.

## VIII.

Last, defendant contends that the trial court erred in finding that he was a sexually violent predator. We agree in part.

As pertinent here, pursuant to § 18–3–414.5(1)(a), C.R.S.2002, a "sexually violent predator" is someone: (1) who is eighteen years of age or older at the time the offense is committed; (2) who has been convicted of sexual assault on a child by one in a position of trust; (3) whose victim was a stranger or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) who, based upon the results of a risk assessment screening, is likely subsequently to commit another sex assault. The statute requires the court to make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator. Section 18–3–414.5(2), C.R.S.2002.

Here, the trial court found that, based on the screening and evaluation, defendant was a sexually violent predator and ordered that the mittimus so indicate. However, there is nothing in the record to indicate that the third requirement of the sexually violent predator definition was met. To the contrary, the victim here was defendant's daughter and thus not a stranger. And the trial court did not make any factual findings on the nature of defendant's relationship with his daughter. Thus, we must remand this case to the trial court to make specific findings of fact and enter an order based thereon.

The judgment of conviction is affirmed, except that the pattern enhancements for the sexual assault on a child and sexual assault on a child by one in a position of trust counts are vacated. The sentence for the pattern of abuse enhancements on the eight sexual assault counts are vacated. The imposition of consecutive sentences, mandatory parole, and the sexually violent predator finding are also vacated. The case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Judge TAUBMAN and Judge NIETO concur.