The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Donald O. WALLIN, Defendant–
Appellant.

No. 04CA1011.

Colorado Court of Appeals,
Div. VI.

July 12, 2007.

§ 24–51–1105, C.R.S.2006.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Joffe Law Firm, Antony M. Noble, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Donald O. Wallin, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree assault. He also appeals the sentence imposed. We affirm the judgment, vacate the sentence, and remand for resentencing.

When defendant was released on parole in July 2003, I.M., his ex-wife picked him up from prison and drove him to her apartment. Defendant was upset because I.M. had given birth to another man's child while he was in prison. As I.M. reported events to the police, defendant took sixty dollars from her purse; beat her in the face and body with his fists, fracturing a bone next to her eye; and then left the apartment, driving off in her car.

The same day, defendant met with his parole officer and mentioned that he might have to take legal action against a girlfriend who was saying bad things about him. A few minutes after defendant left the parole officer, the police contacted the parole officer about the incident at the apartment. Within the next couple of days, the parole officer directed defendant to go to the police department and speak with a particular police officer. However, defendant did not go to the police department, but rather left a taped telephone message for the police officer. Defendant was later arrested at his home.

Defendant was charged by information with second degree assault, pursuant to § 18–3–203(1)(g), C.R.S.2006; first degree aggravated motor vehicle theft, pursuant to § 18–4–409(2), C.R.S.2006; theft, pursuant to § 18–4–401, C.R.S.2006; and, ultimately, a crime of violence, pursuant to § 18–1.3–406(2)(a)(I)(B), C.R.S.2006. A parole revocation complaint was filed effective the same day, and later, defendant's parole was revoked.

Soon after the charges were filed in this case, I.M. recanted all her allegations and filed a declaration with the court, stating that defendant did not hit her or steal her money or her car, that she was on morphine for a head injury when police officers spoke to her at the hospital, and that they "coerced" her to blame defendant for her injuries. The prosecution endorsed an expert witness to testify at trial about domestic violence.

Defendant moved to suppress his taped message to the police as involuntary and to exclude the testimony of the prosecution's designated expert witness on domestic violence as irrelevant and unfairly prejudicial. The trial court denied both motions.

I.M. did not appear for defendant's trial, and a warrant issued for her arrest. She was arrested and jailed overnight, and then she testified that defendant had assaulted her, but did not steal money from her purse or steal her car. The prosecution's expert witness testified generally concerning why victims of domestic violence recant at trial.

The People dismissed the theft charge, and the jury found defendant guilty of second

degree assault and not guilty of motor vehicle theft.

At defendant's request, his trial counsel moved to withdraw before sentencing. The trial court declined defendant's request to appoint alternate defense counsel, and defendant appeared pro se at the sentencing hearing. The court sentenced him to fourteen years in the Department of Corrections.

This appeal followed.

## I. *Anders* Issues

Initially, we address the appendix to defendant's opening brief, which raises seven additional issues, citing *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), but offers no meaningful analysis of any of them.

■■■ Contrary to appellate counsel's assumption, *Anders* does not authorize the advancement of a concededly meritless claim in a brief that contains another claim which is purported to have merit:

> The combination of an argued assignment of error coupled with a request for review pursuant to *Anders* presents an inconsistent and effectively hybrid appeal that is improper.... An *Anders* brief is based on the "conclusion that the appeal is wholly frivolous," and that there are no issues suitable to assign as error. Accordingly, assignments of error may not be argued and then supplemented with a request for "partial" *Anders* review. Such a procedure is improper and fails to provide a basis for this Court to conduct an independent examination pursuant to *Anders*. A case may be presented either under the purview of *Anders* as containing no apparent issue for appeal or as a case involving one or more issues suitable for appellate review; logically and procedurally, it cannot be brought forward on appeal as both.

*State v. Grady*, 136 N.C.App. 394, 398, 524 S.E.2d 75, 78 (2000)(quoting *State v. Kinch*, 314 N.C. 99, 102, 331 S.E.2d 665, 666 (1985))(emphasis and citation omitted). Accordingly, we decline to address defendant's additional issues.

Moreover, these issues are presented to us in a perfunctory or conclusory manner, and we thus decline to review them. *See People v. Venzor*, 121 P.3d 260, 264 (Colo.App.2005); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

## II. Expert Testimony

Defendant contends the trial court abused its discretion by admitting the expert testimony on the reasons why domestic violence victims recant. We disagree.

■■■ Trial courts are vested with broad discretion to determine the admissibility of expert testimony, and the exercise of that discretion will not be overturned unless manifestly erroneous. *People v. Martinez*, 74 P.3d 316, 322 (Colo.2003). An abuse of discretion does not occur unless the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Johnson*, 74 P.3d 349, 352 (Colo.App.2002).

■■■ CRE 702 governs a trial court's determination as to whether expert testimony should be admitted. *People v. Johnson*, *supra*, 74 P.3d at 352. The test for the admissibility of expert opinion evidence is: (1) the scientific or specialized principles underlying the testimony must be reasonably reliable; (2) the expert must be qualified to opine on such matters; (3) the expert testimony must be helpful to the jury; and (4) the evidence must satisfy CRE 403, in that the probative value of the evidence must not be substantially outweighed by unfair prejudice. *People v. Martinez*, *supra*, 74 P.3d at 322; *People v. Shreck*, 22 P.3d 68, 77–79 (Colo.2001). "Helpfulness to the jury hinges on whether the proffered testimony is relevant to the particular case: whether it 'fits.' Fit demands more than simple relevance; it requires that there be a logical relation between the proffered testimony and the factual issues involved in the litigation." *People v. Martinez*, *supra*, 74 P.3d at 323.

■■■ In cases involving domestic violence, expert testimony concerning the reasons for victims' recantations is admissible. *People v. Johnson*, *supra*, 74 P.3d at 353; *People v. Lafferty*, 9 P.3d 1132, 1135 (Colo.App.1999).

The reliability of the principles underlying opinion evidence about battered women is well recognized. *People v. Johnson, supra.*

At a pretrial hearing, the trial court denied defendant's motion to exclude the testimony of the prosecution's expert, following *People v. Johnson* and applying the four-part *Shreck* analysis. The trial court found that the accepted principles underlying this type of testimony were reasonably reliable, that the testimony would be useful to the jury, and that the probative value of a general psychological profile of a domestic violence victim would not be substantially outweighed by the danger of unfair prejudice.

At trial, I.M. testified that she had given defendant sixty dollars when she picked him up. She described their quarrel, stating that defendant assaulted her, punching her body and hitting her in the eye. She stated that he immediately apologized, hugged her, and tried to help, but left when she told him to do so. She testified that, after the assault, her car was not at the apartment, and she did not know where it went, but defendant called the next day to tell her where the car was parked. She testified that she considered the car their joint property. I.M. also testified at trial that she had originally told the police that defendant took sixty dollars from her, but she stated that she felt foolish admitting that she had given money to defendant when he was upset with her. She also admitted having later told the police that she hit her head on a coffee table while she and defendant were playing around, stating that she told that story because she was afraid of defendant.

After being qualified, the expert witness testified that recantation happens in several possible ways. Sometimes a victim denies the story altogether and says that it never happened. Other times, a victim minimizes the story and says, "[S]omething happened but it wasn't quite as bad as I first said. Really. I made a mountain out of a mole hill." The expert witness testified that this is the most common form of recantation. Finally, a victim may refuse to tell the story again, to talk to police, or to come to court to testify.

On appeal, defendant contends that, because I.M. did not recant her story at trial, and because as far as the jury was concerned, her story was consistent, the expert witness's testimony was not relevant and could have served only to prejudice defendant. We disagree.

I.M. acknowledged at trial that she had given different accounts of whether defendant took her money. And she acknowledged that defendant hit her, but added details minimizing his assault on her. Further, I.M. admitted that she had changed her story about whether defendant assaulted her. She also stated that she did not know what had happened to her car.

The jury was therefore aware that I.M. had changed her story at least once about the assault and the money, and could infer that she had changed her story about the car theft. Thus, we conclude the expert's testimony was relevant to the victim's credibility, a key issue in the case, because it helped the jury understand the inconsistencies in I.M.'s statements regarding defendant's actions. *See People v. Johnson, supra,* 74 P.3d at 353.

Because the opinion evidence here was relevant to the issue of the victim's credibility and helpful to the jury, and the expert did not testify regarding the specific relationship between defendant and the victim, we further conclude the probative value of the evidence was not substantially outweighed by any unfair prejudicial effect. *See People v. Johnson, supra,* 74 P.3d at 353.

Accordingly, we perceive no abuse of discretion in admitting the testimony of the expert witness.

### III.  Motion to Suppress

Defendant contends the trial court erred by denying his motion to suppress a recording of a telephone call he made to the police. We disagree.

The trial court ruled that defendant's statements in the recorded telephone message were admissible because there was no coercion and the statements were voluntary and an attempt to be exculpatory.

■ A trial court's suppression ruling presents a mixed question of fact and law. We defer to the trial court's findings of fact, if supported by competent evidence in the record, but we review its conclusions of law de novo. *People v. Medina,* 25 P.3d 1216, 1223 (Colo.2001). We will not set aside the trial court's findings of fact on the issue of voluntariness unless they are clearly erroneous. *People v. Medina, supra,* 25 P.3d at 1223.

■ "[W]hen a defendant seeks to suppress a statement as involuntary, the prosecution must prove by a preponderance of the evidence that the statement resulted from a free and unconstrained choice." *People v. Medina, supra,* 25 P.3d at 1222. Courts determine whether a statement was voluntary by considering the totality of the circumstances surrounding the statement. *People v. Medina, supra,* 25 P.3d at 1222. "This inquiry includes weighing 'the circumstances of pressure against the power of resistance of the person confessing.'" *People v. Medina, supra,* 25 P.3d at 1222 (quoting *Dickerson v. United States,* 530 U.S. 428, 434, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000)). Coercive physical or psychological conduct by the government renders an otherwise voluntary statement involuntary, if the conduct plays a significant role in inducing the statement. *People v. Medina, supra,* 25 P.3d at 1222. Without police conduct causally related to a confession, there is no basis for concluding that a statement is involuntary. *People v. Medina, supra,* 25 P.3d at 1222.

■ Defendant contends his taped telephone statement to the police was coerced and involuntary because his parole officer directed him to contact the police, and he was required to follow his parole officer's directives as a condition of parole. We disagree.

Here, the record shows that defendant did not go to the police station to see the detective, as he had been instructed to do by his parole officer. Instead, he telephoned the police detective and left a message on the answering machine, explaining that "they were trying to make it domestic violence," even though he and I.M. had explained that the incident was an accident and that he wanted to work out a resolution.

Further, although defendant's parole could have been revoked for not contacting the detective, the record shows defendant was not told by the parole officer that his parole would be revoked if he did not incriminate himself. He was only told to speak with the detective, a situation faced by many suspects. In any event, according to the parole officer, defendant did not obey his directive to speak to the police detective in person, and did not even speak directly to the police detective over the telephone, but left a recording of his choice on the answering machine. Thus, the record supports the trial court's finding that the statements were made of defendant's own volition, and that he made them in an attempt to exculpate himself.

We also agree with the trial court that there was no coercive conduct here. We see nothing inherently coercive in a mere instruction by the parole officer, without more, to report and talk to the police detective. *Cf. Minnesota v. Murphy,* 465 U.S. 420, 431–35, 104 S.Ct. 1136, 1144–46, 79 L.Ed.2d 409 (1984)(although probation officer could compel defendant's presence and truthful answers, the setting was not inherently coercive without arrest and without assertion that invocation of Fifth Amendment privilege would lead to revocation of probation); *People v. Elsbach,* 934 P.2d 877, 881 (Colo.App. 1997) (even if a probationer is required to submit to questioning, the Fifth Amendment right against compelled self-incrimination is not violated unless the state threatens to revoke probation on the basis of the invocation of that right).

Accordingly, we perceive no error in the trial court's denial of the motion to suppress.

### IV. Right to Counsel at Sentencing

Defendant contends the trial court erred by denying his request for appointment of conflict-free counsel at state expense to represent him at his sentencing hearing. We agree.

■ Effective waiver of counsel is a mixed question of fact and law that we re-

view de novo. *People v. Alengi*, 148 P.3d 154, 159 (Colo.2006).

Under the United States and Colorado Constitutions, the right to counsel exists at every critical stage of a criminal proceeding, including a sentencing hearing. *People v. Loyd*, 902 P.2d 889, 890 (Colo.App.1995).

A defendant may waive assistance of counsel either expressly or impliedly through his or her conduct. An implied waiver occurs when the defendant is deemed to have forfeited the right to counsel, as opposed to having made a deliberate decision to forgo the right. *People v. Alengi, supra*, 148 P.3d at 159. "Courts must ascertain whether, under the totality of the circumstances, a defendant's conduct evinces a voluntary, knowing, and intelligent waiver of right to counsel." *People v. Alengi, supra*, 148 P.3d at 159. Thus, the record as a whole, including the reasons given by the defendant for not having counsel, must show that the defendant knowingly and willingly undertook a course of conduct that demonstrates an unequivocal intent to relinquish or abandon his or her right to representation. *People v. Alengi, supra*, 148 P.3d at 159.

"Because there exists a strong presumption against the waiver of a fundamental constitutional right, the trial court has the duty to make a careful inquiry about the defendant's right to counsel and his or her desires regarding legal representation." *People v. Alengi, supra*, 148 P.3d at 159; *see People v. Arguello*, 772 P.2d 87, 96 (Colo. 1989) (recommending list of questions a trial judge should ask before allowing defendant to waive the right to counsel); *King v. People*, 728 P.2d 1264, 1269 (Colo.1986). Before finding a valid implied waiver, a court must properly advise the defendant in advance of the consequences of his or her actions. *People v. Alengi, supra*, 148 P.3d at 159.

A request for new counsel is not ordinarily a waiver of the right to counsel. *People v. Mossmann*, 17 P.3d 165, 170 (Colo. App.2000). "However, an unreasonable request or a request without good cause may lead to a waiver." *People v. Mossmann, supra*, 17 P.3d at 170. Good cause includes a conflict of interest, a complete breakdown of

communication, or an irreconcilable conflict. If good cause exists, the court must substitute new counsel. *People v. Arguello, supra*, 772 P.2d at 94; *People v. Mossmann, supra*, 17 P.3d at 170. "If the trial court finds good cause does not exist, it can insist that the defendant choose between continued representation by counsel and pro se appearance." *People v. Campbell*, 58 P.3d 1148, 1156 (Colo. App.2002). However, the court must give the defendant a clear choice between counsel and a waiver, and before the court permits a waiver of counsel, it should make the defendant aware of the dangers and disadvantages of self-representation. *People v. Campbell, supra*, 58 P.3d at 1156.

Here, the record shows that, prior to sentencing, the public defender moved to withdraw at defendant's request. Defendant told the court that he requested that his attorney withdraw based on "ongoing problems," which he explained as follows: "Like I say, I've contacted her by telephone and by letter many times. There's been hardly no [sic] communication even with regard to the sentencing aspect of this case, Your Honor. There's been no direction, no type of guidance towards what should be done or anything."

Defendant went on to state that he did not want to represent himself, but was unsatisfied with his representation by the public defender. He asked to have alternate defense counsel appointed, and when the trial court refused, he stated that he would proceed pro se or would try to hire counsel.

The trial court agreed to allow defendant to make one phone call and to allow his attorney to withdraw, noting for the record, "I find [the attorney] highly qualified and capable and find [her] representation of you in this case to be exceptional." The trial court refused again to appoint alternate defense counsel.

Based on our review of the record, we conclude that defendant neither expressly nor impliedly waived his right to counsel. Instead, he merely stated that he did not want to represent himself. *See People v. King*, 121 P.3d 234, 237 (Colo.App.2005)(defendant's request for appointment of new

counsel and a continuance, with a request to proceed pro se in the alternative, did not constitute an unequivocal request for self-representation). We are not convinced that defendant knowingly and willingly undertook a course of conduct that demonstrated an unequivocal intent to relinquish his right to representation. *See People v. Alengi, supra,* 148 P.3d at 159.

Moreover, defendant's statement about the lack of communication with counsel indicated the possibility, at least, of a complete breakdown of communication. However, the trial court did not make careful inquiries as to defendant's desire for counsel, investigate whether he had good cause to request new counsel, or advise him of the dangers and disadvantages of self-representation. *See People v. Alengi, supra,* 148 P.3d at 159; *People v. Campbell, supra,* 58 P.3d at 1156.

Under these circumstances, we conclude that the record does not establish an implied waiver of defendant's right to counsel, and therefore, the trial court erred by denying defendant's request for conflict-free counsel for his sentencing. Accordingly, we vacate the sentence and remand for a new sentencing hearing, with the court to appoint conflict-free counsel.

## V. Presentence Confinement Credit

Because it will likely arise on remand for resentencing, we address and reject defendant's contention that the trial court erred by denying his request for presentence confinement credit (PSCC) for 250 days he spent in jail on parole hold prior to sentencing.

Whether the applicable statutory scheme authorizes PSCC is a question of law, which we review de novo. *See People v. Norton,* 63 P.3d 339 (Colo.2003).

Section 18–1.3–405, C.R.S.2006, provides in pertinent part:

If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

In *People v. Norton, supra,* the supreme court interpreted the scope of § 18–1.3–405 in a situation very similar to that presented here. In *Norton,* a defendant on parole was arrested and charged with a new crime, jailed for sixty-nine days, received a new sentence to eighteen months, and then had his parole revoked. Applying the plain language of § 18–1.3–405, the supreme court determined that the sixty-nine days of PSCC should be applied to the term remaining on the defendant's mandatory parole period for the previous offenses, rather than credited to the new sentence. *See People v. Norton, supra,* 63 P.3d at 343–44. The court reasoned that, because the previous sentence incorporated both the incarceration element and the parole component of the defendant's penalty, time that the defendant was incarcerated would apply to serving an aspect of the defendant's previous sentence. *See People v. Norton, supra,* 63 P.3d at 344; *see also People v. Hays,* 817 P.2d 546, 547 (Colo.App. 1991) (because defendant was on parole when he committed a new offense, whether he was in or out of physical confinement, he continued to serve out his previous sentence and could not receive PSCC for incarceration based on the new offense, even when his parole was not yet revoked). In our view, the supreme court's holding in *Norton* is applicable here and dispositive of defendant's contention.

Relying on § 17–2–103(6)(c), C.R.S.2006, defendant argues, however, that because his parole officer filed a complaint and put him on parole hold, his parole was tolled. He thus maintains that, from that point to the date his parole was revoked, he was not serving any aspect of his previous sentence, and should receive PSCC on his sentence in this case. We are not persuaded.

Section 17–2–103(6)(c) provides that the filing of a complaint by a parole officer tolls the expiration of the parolee's parole. *Goetz v. Gunter,* 830 P.2d 1154, 1156

(Colo.App.1992). The statute's purpose in tolling the expiration of parole is to ensure that the parole board retains jurisdiction over whatever violation the defendant has committed. *Duran v. Price,* 868 P.2d 375, 378 (Colo.1994); *Goetz v. Gunter, supra,* 830 P.2d at 1156. The tolling of the expiration of parole upon the filing of a violation complaint does not impose additional punishment. *Goetz v. Gunter, supra,* 830 P.2d at 1156.

We conclude that § 17–2–103(6)(c) does not negate or change the general rule for applying PSCC set forth in § 18–1.3–405. Rather, the filing of a parole revocation complaint merely provides jurisdiction to the parole board, but once the parole board makes its decision, the time starts running again from the date of the complaint whether the complaint is dismissed or parole is revoked. This interpretation of the tolling provision in § 17–2–103(6)(c) gives reasonable and harmonious effect to § 18–1.3–405, which provides that a defendant receive PSCC on his or her original sentence and not the new sentence. Therefore, we conclude that, pursuant to *Norton,* defendant's PSCC is to be applied to the term remaining on his mandatory parole period for his previous offense, and that the trial court properly did not award defendant PSCC in this case.

We also reject defendant's contention that, because he could not afford a bond while awaiting sentencing on the new charge and had to spend the time in jail, denial of PSCC here violated his rights to equal protection. *Cf. People v. Norton, supra,* 63 P.3d at 347–48 (although parolees who are able to post bond and those who are not both receive credit for serving out their respective periods of mandatory parole resulting from their previous offenses, an inmate who remains incarcerated while awaiting sentencing on the new charge is properly credited with no "extra time" for the period of presentence confinement).

Because defendant's PSCC is to be applied to his previous sentence, we perceive no error in the trial court's denial of his request to amend the mittimus in this case by crediting him with PSCC.

The judgment is affirmed. The sentence is vacated, and the case is remanded for resentencing consistent with this opinion.

Judge WEBB and Judge FURMAN concur.