The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Elias Armando VALDEZ,** Defendant–Appellant.

Nos. 05CA2624, 05CA2626.

Colorado Court of Appeals, Div. III.

April 3, 2008.

John W. Suthers, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Tracy C. Renner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

In this consolidated appeal, defendant, Elias Armando Valdez, appeals the judgments of conviction entered upon jury verdicts finding him guilty of attempted first degree murder, first degree assault, menacing, violation of bond conditions, and two counts · of viola-

tion of a protective order. He also appeals the revocation of a deferred judgment and sentence he received in an unrelated case because the revocation was based on the judgments of conviction he received in this case. We affirm.

## I. Background

In 2003, defendant was charged with distribution of cocaine to an undercover officer and possession of marijuana. He received a four-year deferred sentence with a four-year probation period.

A year later, defendant's wife asked him to move out of their home because of his drug use and legal troubles. She told him the relationship was over. On November 2, 2004, he moved out.

Later that month, defendant was charged with domestic violence against his estranged wife after an incident where he went to another man's house looking for her. She obtained a restraining order, which barred him from contact with her or the residence where she was living, which was also his former home.

Defendant later contacted her by phone. She told him that he needed to go through the court and that she had met someone else. Defendant later learned it was one of his former schoolmates.

Two months later, defendant called his estranged wife at her work to ask who had been driving her car. Later that night, he drove to her house to see if his former schoolmate was there. He saw the boyfriend's car there, then parked a block away, broke into the basement of the house, and hid. During this time, his estranged wife and her boyfriend engaged in sexual relations, and then went to sleep in her bed.

He remained in the basement until 6 or 7 a.m., when he went into the yard, picked up a metal pipe, and then re-entered the house, where he also picked up a knife. He walked upstairs to the bedroom, hit the boyfriend in the face with the metal pipe, and stabbed him in the chest. Defendant then woke up his estranged wife and told her that her boyfriend was dead and that he was going to get rid of her, too. He said if he could not have her, nobody was going to have her. The boyfriend survived, and defendant was arrested.

At trial, the court refused defendant's request to present expert testimony on the subject of heat of passion. However, the court instructed the jury on the lesser included offense of attempted second degree murder and the heat of passion mitigator with respect to both attempted second degree murder and first degree assault. The jury returned verdicts finding defendant guilty as charged.

While defendant was in custody, the probation department petitioned to revoke the four-year deferred sentence and probation defendant had received for possessing and distributing marijuana. The department cited to the charges stemming from the stabbing and beating of his estranged wife's boyfriend, as well as to a charge of third degree assault stemming from another incident. After a hearing, the court revoked defendant's deferred judgment and sentence and sentenced him to the Department of Corrections for thirty years on the attempted first degree murder conviction, six years on the menacing count, two one-year terms on the violation of the restraining order counts, and six months on the violation of bond conditions count.

Defendant appeals the judgments of conviction that resulted from the stabbing, as well as the revocation of his deferred judgment and sentence on the possession and distribution charges.

## II. Expert Heat of Passion Testimony

■ Defendant first contends that the trial court erred by excluding his expert's testimony on the subject of heat of passion. We disagree.

■ Trial courts are vested with broad discretion to determine the admissibility of expert testimony, and the exercise of that discretion will not be overturned unless manifestly erroneous. *People v. Wallin,* 167 P.3d 183, 187 (Colo.App.2007). An abuse of discretion does not occur unless the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

■■ The admissibility of expert testimony is governed by CRE 702, which states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Thus, the court must first consider whether the substance of the proffered testimony will be helpful to the fact finder. *Brooks v. People,* 975 P.2d 1105, 1109 (Colo.1999). Helpfulness hinges on whether the proffered testimony fits the particular case, and fit demands more than simple relevance. There must be a logical relation between the proffered testimony and the factual issues involved. *Wallin,* 167 P.3d at 187.

■ Accordingly, when a defendant asserts a heat of passion defense, expert testimony may be admissible to describe characteristics of a heat of passion murder or attempted murder if the testimony will be helpful to the jury, as intended by CRE 702. *See Lanari v. People,* 827 P.2d 495, 504 (Colo.1992).

Here, however, the trial court determined the expert's testimony would not be helpful to the jury because the heat of passion mitigator of section 18–3–103(3)(b), C.R.S.2007, does not apply when a person intentionally seeks out the highly provoking act in question, as defendant had done here. We agree.

Section 18–3–103(3)(b) provides, in part:

> [M]urder in the second degree is a class 3 felony where the act causing the death was performed upon a *sudden* heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person; but, if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is a class 2 felony.

(Emphasis added.) "Sudden" is defined as "coming or occurring unexpectedly: not foreseen: ... prompt, immediate" *Webster's Third New International Dictionary* 2284 (1986). Thus, under the plain terms of the statute, a defendant is only entitled to have the jury instructed on the provocation mitigator if the heat of passion is unexpected, unforeseen, and immediate. *See Hernandez v. People,* 176 P.3d 746, 751 (Colo.2008) (if plain language of statute is unambiguous, court must apply statute as written).

Here, there was undisputed evidence before the trial court that defendant's heat of passion was not unexpected, unforeseen, and immediate because he had gone to his estranged wife's house for the purpose of catching her with another man. Specifically, the report from defendant's psychology expert stated:

> He [defendant] had very strong feelings about his wife bringing a man in his house. He decided at that point to check.... At his house, he saw her car, but he also saw [her boyfriend's] car (his old school buddy). He continued to focus on being disrespected that she could bring someone else into their house. He parked his truck at his cousin's house (about a block away) and went to the cellar of his house.

Indeed, defense counsel stated:

> [O]n the evening in question, he [defendant] was driving around. He had a phone contact, which there has been testimony about, with his wife earlier in the evening, that he was aware that she was seeing [her boyfriend]: That he was feeling extremely depressed, that he was considering suicide. That he did decide to go to the family home to see for himself whether, in fact, [the boyfriend] was with his wife.

The trial court also specifically found that defendant went to his estranged wife's house for the sole purpose of catching her with another man, and defense counsel did not dispute the finding.

Thus, the undisputed evidence before the court indicated that defendant intentionally put himself in the provoking situation by going to his estranged wife's house for the purpose of being there while she engaged in sexual relations with her boyfriend.

Under these circumstances, we conclude the court did not err in determining that the statute's provocation mitigator was inapplica-

ble and, therefore, that the expert's testimony would not be helpful to the jury. *See Warren v. State*, 34 Ala.App. 447, 41 So.2d 201, 202–03 (1949) (where husband, suspecting that his wife was out with man with whom he knew she had been having an amorous affair for some time, waited for their return, observed them kissing, and shot the man as soon as they were disengaged from embrace, husband was not entitled to lesser charge based on provocation); *People v. Gingell*, 211 Cal. 532, 296 P. 70, 75 (1931) (reduction of crime to second degree murder or manslaughter was not appropriate where defendant suspected that his wife was committing adultery and defendant went to her apartment to catch her); *Commonwealth v. Rodriguez*, 431 Mass. 804, 731 N.E.2d 71, 79 (2000) (where defendant harbored suspicions that his wife was having a sexual relationship with another man, he cannot claim that confirmation of the infidelity constituted a "sudden" discovery); *State v. Gadsden*, 314 S.C. 229, 442 S.E.2d 594, 597 (1994) (where defendant, suspecting his spouse of adultery, lies in wait or searches for the "guilty embrace," defendant cannot assert heat of passion defense to reduce crime from murder to voluntary manslaughter); *cf. State v. Agnesi*, 92 N.J.L. 53, 104 A. 299, 300 (N.J.Sup.Ct.1918) (defendant could not assert self-defense in killing of his estranged wife's lover when defendant went to his wife's apartment, anticipating he would find them together), *aff'd*, 92 N.J.L. 638, 106 A. 893 (N.J.1919); *State v. Chiles*, 58 S.C. 47, 36 S.E. 496, 497 (1900) (husband who goes in search of another, believing he is committing criminal intimacy with his wife, has no right to shoot the other on finding him holding his wife in "guilty embrace").

██ Although the court determined that the statute's provocation mitigator did not apply when it evaluated the admissibility of defendant's proposed expert testimony, the court subsequently granted defendant's request to instruct the jury on heat of passion. As discussed, the undisputed facts do not, as a matter of law, amount to a sudden heat of passion. Thus, the court erred in giving this instruction. However, because this error inured to defendant's benefit, it was harmless, and therefore does not alter our conclusion

regarding the exclusion of the expert testimony. *See People v. Shields*, 822 P.2d 15, 22 (Colo.1991) (because error in instruction could only have inured to defendant's benefit, error was harmless).

Given our conclusion, we also reject defendant's related arguments regarding the heat of passion instruction and the expert testimony:

- The trial court did not err by declining to give the jury instructions defining terms contained in the heat of passion instruction. As discussed, although defendant benefited from the instruction, he was not entitled to it, and therefore was also not entitled to any further definitions. *See Cassels v. People*, 92 P.3d 951, 955 (Colo.2004) (trial court must only instruct jury on matters of law for which there is supporting evidence).

- The exclusion of his expert's testimony did not deprive him of his right to present a defense or impermissibly burden his decision to testify at trial. As discussed, the trial court did not err in excluding the expert's testimony.

- The trial court did not engage in advocacy for the prosecution by basing its exclusion of the expert testimony on a ground not argued by the prosecution. Defendant has cited no authority supporting this argument, and we know of none.

## III. Challenges for Cause

Defendant also contends that the trial court abused its discretion in denying his challenges for cause as to two prospective jurors. We disagree.

██ We review a trial court's ruling on a challenge for cause for an abuse of discretion and accord great deference to a trial court's handling of such challenges, recognizing the trial court's unique role and perspective in evaluating the prospective juror's credibility, demeanor, and sincerity. *Morrison v. People*, 19 P.3d 668, 672 (Colo.2000); *Carrillo v. People*, 974 P.2d 478, 485–86 (Colo.1999); *People v. Woellhaf*, 87 P.3d 142, 151 (Colo.

App.2003), *rev'd on other grounds,* 105 P.3d 209 (Colo.2005).

■ A trial court must grant a challenge for cause if a prospective juror manifests a bias for or against the defendant, or for or against the prosecution, or acknowledges a previously formed or expressed opinion regarding the guilt or innocence of the defendant, unless the court is satisfied that the juror will render an impartial verdict based solely upon the evidence and instructions of the court. *Morrison,* 19 P.3d at 672.

### A.  Juror H

■ Defendant argues that Juror H had preconceived notions about the heat of passion defense and was biased against defendant for raising that defense.  Defendant also argues that Juror H's statements that he would "try" to follow the court's instructions and that he "felt" he could follow the court's instructions and apply the facts to the law were insufficient to show that he would in fact set aside his preconceived notions. We are not persuaded.

Defendant points to various answers Juror H gave during voir dire regarding the heat of passion defense to show that he was biased. However, even if we were to assume that Juror H's statements revealed an actual bias against defendant because he asserted a heat of passion defense, we would conclude that the trial court nevertheless did not abuse its discretion in denying defendant's challenge for cause.

■ A prospective juror who exhibits actual bias is not automatically disqualified from serving. *People v. Lefebre,* 5 P.3d 295, 301 (Colo.2000).  Rather, such a prospective juror may nonetheless sit on the jury if he or she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. *Id.*

Here, Juror H specifically stated that he would try to do what the court instructed, even if he disagreed with it, and that, if selected, he would feel obligated to follow the jury instructions and apply them to the facts of the case.  In response to further questioning, he indicated that he could apply the facts to the law as written in the jury instructions,

and determine whether the prosecution had proved the elements beyond a reasonable doubt.

We also reject defendant's contention that Juror H's use of the words "try" and "feel" was insufficiently definite to show he would set aside any preconceived notions and decide the case on the evidence and the court's instructions.  *See Woellhaf,* 87 P.3d at 151 (where prospective juror initially expressed doubt as to defendant's innocence, but when questioned indicated "she would *try* to put her biases aside and would want to listen to the evidence" (emphasis added), the trial court was justified in determining juror would follow court's instructions and render a fair and impartial verdict; deferential abuse of discretion standard discourages an appellate court from second-guessing a trial court's evaluation of a prospective juror's body language and inflection based on a cold record).

### B.  Juror R

■ Defendant also argues that Juror R hesitated in answering questions and expressed doubt about his ability to set aside his prior experiences and should have been excused for cause.  We are not persuaded.

Although Juror R initially expressed doubt as to his ability to set aside his prior experiences, he subsequently indicated that he thought he could decide the case based on the court's instructions on the law and the facts of the case.  Accordingly, we perceive no abuse of discretion.  *See Lefebre,* 5 P.3d at 301 (prospective juror who makes statement suggesting actual bias may nonetheless sit on the jury if juror agrees to set aside any preconceived notions and decide the case based on the evidence and the court's instructions).

### IV.  Revocation of Deferred Judgment and Probation

Because we perceive no error in the trial court's entry of the judgments of conviction stemming from the stabbing of defendant's estranged wife's boyfriend, we reject defendant's contention that the trial court erred in basing its decision to revoke defendant's de-

ferred judgment and probation on the convictions entered in this case.

The judgments of conviction are affirmed.

Judge TAUBMAN and Judge LOEB concur.