Opinion by Judge MILLER.
¶ 1 Defendant, Turk Alan Fleischacker, appeals the judgment of conviction entered against him after a jury found him guilty of sexual assault on a child-position of trust, sexual assault on a child-pattern of abuse, and sexual assault on a child.
¶ 2 Defendant contends that (1) the trial court improperly denied his challenges for cause regarding two jurors and (2) the jury violated his right to be free from double jeopardy by issuing two convictions on identical elements and factual bases. We affirm and as a matter of first impression hold that section 16-10-103(1)(b), C.R.S.2012, does not require the disqualification of a prospective juror related within the third degree to a paralegal working in a district attorney's office.
I. Background
¶ 3 When she was ten years old, the victim told her mother that defendant, her stepfather, had been touching her inappropriately. Her mother questioned her about the details. After the victim told her mother that defendant had pinched her breasts and "had her sitting on his lap and was moving her around," the mother went to confront defendant while he was at work. When she asked him whether the accusations were true, he *23 responded, "Yeah, but it doesn't really matter, I'm not her dad." The mother then reported the accusations to the police.
¶ 4 At trial, the victim testified that
• after her ninth birthday defendant began touching her breasts "above and under" her clothes;
• he had touched around her vaginal area above her clothes with his hands "a lot";
• the touching of her vaginal area happened in different instances separated by time and also separate from the touching of her breasts;
• sometimes defendant put her on his lap and moved her around until she "felt something hard";
• this happened more than once, separated by time, but "not as much as everything else";
• the last time any inappropriate touching happened was about a month before she reported the behavior to her mother and the police; and
• in the month prior to that report, defendant had touched her buttocks with his hand over her clothes "quite a few times" in separate episodes.
¶ 5 A jury convicted defendant of the three counts of sexual assault on a child described above.
II. Challenges for Cause
¶ 6 Defendant contends that the trial court erred in denying his challenges for cause against Jurors G. and J. We disagree.
A. Standard of Review
¶ 7 We review a trial court's denial of a challenge for cause for an abuse of discretion. Carrillo v. People, 974 P.2d 478, 485 (Colo.1999) ; People v. Hancock, 220 P.3d 1015, 1016 (Colo.App.2009). The trial court has broad discretion over challenges for cause because it is in the best position to assess a potential juror's demeanor, credibility, and sincerity. Dunlap v. People, 173 P.3d 1054, 1082 (Colo.2007) ; People v. Shover, 217 P.3d 901, 907 (Colo.App.2009) (an appellate court accords "great deference" to a trial court's handling of challenges for cause, "recognizing its unique role and perspective in evaluating the prospective juror's credibility, demeanor, and sincerity"). "A court abuses its discretion when it renders a decision that is manifestly arbitrary, unreasonable, or unfair." People v. Luman, 994 P.2d 432, 435 (Colo.App.1999). Where a trial court errs in denying a challenge for cause and the defendant exhausts his or her peremptory challenges, reversal is required without any further demonstration of prejudice. Morrison v. People, 19 P.3d 668, 671 (Colo.2000) ; People v. Hancock, 220 P.3d 1015, 1016 (Colo.App.2009).
B. Juror G.
1. Basis of Challenge
¶ 8 During voir dire, Juror G. asked to speak with the court and the attorneys in private. In chambers, Juror G. told the court that he had previously worked in law enforcement for four and one-half years, his daughter was an employee at the district attorney's office, his son worked for the Denver sheriff's office, and his son-in-law was a parole officer. He also stated that the prosecuting attorney had attended his daughter's wedding the previous month. Upon questioning, Juror G. added that his daughter was a certified paralegal and had worked for two and one-half years as "a legal assistant and paralegal" for the same district attorney's office prosecuting defendant's case. He said that he sometimes talked to his daughter about her work and would occasionally go to her office to "swap[ ] keys and things along those lines."
¶ 9 After disclosing this information, Juror G. said, "I don't know that I would be the best for your case." In response to questions, however, Juror G. expressly said he "could be fair to both sides." He also told the court that he could listen to the evidence and decide whether the prosecutor had proved the charges beyond a reasonable doubt.
¶ 10 Defendant challenged Juror G. for cause on the basis of his relationship with the prosecution and law enforcement, explicitly referring to his daughter's employment with *24 the district attorney's office. The trial court denied the challenge. The court said that it "had an opportunity to observe him and observe his answers" and that his visits to the district attorney's office were "limited to doing personal things with his daughter instead of interacting with office personnel."
¶ 11 Defendant used a peremptory challenge to remove Juror G. and exhausted all of his peremptory challenges.
2. Analysis
a. Implied Bias
¶ 12 Defendant first contends that the trial court erred when it did not find implied bias on the part of Juror G., as a matter of law, under section 16-10-103(1)(b). We disagree.
¶ 13 In determining the meaning of a statute, our central task is to ascertain and give effect to the intent of the General Assembly. Robbins v. People, 107 P.3d 384, 387 (Colo.2005). We begin by looking to the express language of the statute, construing words and phrases according to their plain and ordinary meaning. Id.; see § 2-4-101, C.R.S.2012. If, after review of the statute's language, we conclude that the statute is unambiguous and the intent appears with reasonable certainty, our analysis is complete. People v. Darlington, 105 P.3d 230, 234 (Colo.2005).
¶ 14 Section 16-10-103(1)(b) provides that a trial court shall sustain a challenge for cause when a juror has a "[r]elationship within the third degree, by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case." The supreme court held in People v. Macrander, 828 P.2d 234, 241 (Colo.1992), that when an elected district attorney is the attorney of record, a challenge for cause should be sustained under section 16-10-103(1)(b) based on a juror's relationship not only to the district attorney, but also to the assistant district attorney, the chief deputy district attorney, and all deputy district attorneys in that office.
¶ 15 Juror G. was related within the third degree to his daughter, a paralegal in the district attorney's office. Defendant argues Macrander 's holding includes paralegals employed by the district attorney's office under the definition of "attorney of record." On its face, however, Macrander does not apply to paralegals, and we decline to expand its holding beyond deputy district attorneys employed by an elected district attorney. We do so for several reasons:
• The plain language of section 16-1-103(1)(b) does not extend to paralegals.
• The supreme court limited its holding in Macrander to the assistant, the chief deputy, and all deputy district attorneys. 828 P.2d at 240, 242.
• The supreme court cited numerous rules and other authorities making clear that an attorney of record is an attorney. Id. at 240-41. None of these authorities refers to paralegals.
• The supreme court emphasized that deputy district attorneys "have 'all the powers of the district attorney.' " Id. at 240 (quoting § 20-1-202, C.R.S.2012 ). No similar statute grants such powers to paralegals.
• The supreme court relied on several of its prior decisions recognizing the agency relationship existing between the district attorney and deputy district attorneys. Id. at 241. None of these authorities refers to a similar agency relationship existing between the district attorney and paralegals.
• The supreme court explained the unique relationship under the statute between a district attorney and his or her assistant, chief deputy, and deputy district attorneys:
The design of [the] statutory scheme is to reciprocally vest prosecutorial authority in the elected district attorney and all members of the district attorney's staff-the assistant, chief deputy, and deputy district attorneys-so that an act performed by the district attorney is an act undertaken on behalf of all members of the district attorney's prosecuting staff in the same manner and to the same extent as an act performed by an assistant, chief deputy, or deputy district *25 attorney is an act undertaken on behalf of the elected district attorney.
Id. at 240. Obviously, that relationship does not exist between paralegals and the district attorney or deputy district attorneys.
• None of the other disqualifying conditions set forth in section 16-10-103(1), C.R.S.2012, extends to prospective jurors having a relationship within the third degree to a person who would be directly disqualified. Thus, for example, the statute does not automatically disqualify a parent, child, or spouse of a victim, a testifying police officer, or another witness from serving as a juror. Given that the statute is so narrowly drawn, we decline to expand the reach of Macrander to persons who may be related within the third degree to a paralegal employed in the district attorney's office.
¶ 16 In concluding that section 16-10-103(1)(b) does not reach paralegals, we stress that such prospective jurors may be subject, based on the circumstances of a particular case, to removal for cause for actual bias under section 16-10-103(1)(j), C.R.S.2012.
¶ 17 We therefore conclude that, because Juror G.'s daughter was a paralegal, and not an attorney, the trial court did not err in denying defendant's challenge for cause under section 16-10-103(1)(b).
b. Actual Bias
¶ 18 Defendant further contends that the trial court erred in finding that Juror G. was not actually biased because of his numerous connections to law enforcement. We disagree.
¶ 19 In People v. Reddick, 44 Colo.App. 278, 280, 610 P.2d 1359, 1361 (1980), a division of this court held that a trial court abused its discretion where a "combination of factors reflecting [the juror's] close association with the law enforcement establishment required [the juror's] dismissal for cause." A juror who has associations with law enforcement, however, is not automatically disqualified. People v. Roldan, 353 P.3d 387, 388-91 (Colo.App.2011) (cert. granted Feb. 13, 2012).[1] A court must also consider a juror's statements during voir dire to determine if he or she is impartial, despite his or her associations with law enforcement. See id. at 389-90. In Roldan, the division held that a trial court abused its discretion when the juror demonstrated "a 'clear expression of bias' in favor of law enforcement witnesses and [an inability] to render an impartial verdict." Id. at 390 (quoting People v. Prator, 833 P.2d 819, 820-21 (Colo.App.1992), aff'd, 856 P.2d 837 (Colo.1993) ). The division stressed that the juror "failed to expressly state that her relationships with law enforcement would not interfere with her ability to hold the prosecution to its burden, or that she would be fair and impartial with both parties," but "expressly stated that she thought she would 'end up' being biased." Id. at 390.
¶ 20 Here, Juror G. demonstrated neither a clear expression of bias nor an inability to render an impartial verdict. Although he had relationships with a number of people associated with law enforcement, Juror G. consistently stated that those relationships would not impact his ability to render a fair verdict. There was no indication that his daughter worked on defendant's case or that she ever spoke to Juror G. about the case. Further, Juror G. expressly stated that he could hold the prosecution to its burden of proof and that he would be impartial to both sides. Considering Juror G.'s unequivocal statements during voir dire, we conclude the trial court did not abuse its discretion when it denied defendant's challenge for cause.
C. Juror J.
1. Basis of Challenge
¶ 21 Juror J.'s daughter was sexually assaulted by his brother-in-law when she was fourteen or fifteen years old. The assault occurred ten years before defendant's trial.
¶ 22 Juror J. was questioned in chambers about this subject. He responded, "Yes," to the court's question whether he had "any concerns about this kind of case." The court then asked whether Juror J. had any concerns about serving as a juror on the case:
*26 Juror J. responded, "I'm not sure, probably not." He stated that he was willing to listen to the court's instructions about the law, apply a presumption of innocence, and hold the prosecution to its burden of proof. When asked if he could be a fair and impartial juror in this case, Juror J. said, "I think I could." In response to defense counsel's questions, Juror J. said that his daughter still suffered effects from her assault and that he would be sympathetic to an alleged victim of a similar assault. However, he also said that he did not think those feelings would affect his ability to be fair to defendant in this case. Upon further questioning, he said, "I think I could be fair." He said that he did not have any doubts about his ability to be fair "consciously, [though] maybe subconsciously something is going on, but [he did not] really feel like it." Juror J. also said that he did not believe he would have difficulties once he started to hear the evidence in the case, but if he did, he would inform the court. He also responded, "No," when defense counsel asked him if he had "any kind of serious doubt that [he would] not be able to be a fair juror."
¶ 23 After this in-chambers questioning, defendant asked the court to excuse Juror J. for cause because of his daughter's experience and his lack of definitive answers. The court denied the challenge, saying, "I have been able to watch his demeanor, and there wasn't anything in his demeanor that would give rise [sic] to the Defendant in this matter."
¶ 24 Upon further questioning in open court, Juror J. stated that the prosecution would have to prove any accusation. He also responded in the affirmative when the court asked if he could be fair in this case.
¶ 25 In addition to timely challenging Juror J. for cause, defendant used a peremptory challenge to remove him, and exhausted all of his peremptory challenges.
2. Analysis
¶ 26 Defendant also argues that the trial court erred when it denied his challenge for cause with respect to Juror J. because of "inconsistencies and thus ambivalence about the effect on him stemming from the sexual assault of his 14-15 year-old daughter." We disagree.
¶ 27 During voir dire, jurors often express concern or indicate preconceived beliefs. Prator, 833 P.2d at 820. Such concerns and beliefs do not automatically disqualify a juror from service. People v. Blessett, 155 P.3d 388, 393 (Colo.App.2006) ; Prator, 833 P.2d at 820. Despite initially expressing concerns, a potential juror can be rehabilitated by the trial court or the prosecutor. See People v. Valdez, 183 P.3d 720, 725 (Colo.App.2008). The court may then exercise its discretion to deny the challenge for cause if it is "satisfied that the juror will render an impartial verdict based solely upon the evidence and instructions of the court." Id. It is not necessary that a prospective juror state with absolute certainty that he or she will set aside all potential bias. A juror's commitment to try to put his or her biases aside and expression of a belief that he or she can be fair are deemed sufficient to deny a defendant's challenge for cause. See id. (statements by a prospective juror that he would "try to do what the court instructed" and that he would "feel obligated to follow the jury instructions" were sufficient to support the trial court's conclusion that the prospective juror would set aside any preconceived notions and decide the case on the evidence and the court's instructions); People v. Woellhaf, 87 P.3d 142, 151 (Colo.App.2003) (denial of challenge for cause upheld where prospective juror, who had worked with child sexual assault victims, initially expressed some doubt as to defendant's innocence, but subsequently said she would try to put her biases aside, would want to listen to the evidence, and thought that she could be fair), rev'd on other grounds, 105 P.3d 209 (Colo.2005).
¶ 28 Here, we cannot say that the trial court's denial of defendant's challenge for cause to Juror J. was "arbitrary, unreasonable, or unfair." See Luman, 994 P.2d at 435. Juror J. initially said he had concerns about "this kind of case" and would be sympathetic toward a victim of sexual assault. However, he also repeatedly stated that he thought he could be fair in this particular *27 case and had no "serious doubt" he could be a fair juror. Juror J. gave further assurances that he could listen to the court's instructions and hold the prosecution to its burden of proof. Under these circumstances, we conclude the trial court did not abuse its discretion in denying defendant's challenge for cause to Juror J.
III. Double Jeopardy
¶ 29 Defendant also argues his convictions for Counts Two and Three violated his right to be free from double jeopardy because they were predicated on the same factual basis. We disagree.
A. Background
¶ 30 The verdict forms for Counts Two and Three were identically captioned, "Sexual Assault on a Child (Touching of the Buttocks)." Because Count Two was for a pattern of abuse, it also included a special interrogatory with three questions about the jury's findings with respect to other acts of sexual contact. During closing arguments, the prosecutor told the jury the predicate act for Count Two was defendant touching the victim's buttocks with his hand, and Count Three was for touching the victim's buttocks with defendant's lap.
¶ 31 In the course of deliberations, the jury submitted a question about the verdict forms asking if Count Three referred to " 'the moving around on [the] lap' or ... touching [defendant's] erection or both." The court acknowledged to counsel that the verdict form's caption for Count Three should have read "the lap" instead of "Touching the Buttocks." When the court said it would refer the jury to the instruction defining sexual contact, defense counsel said he "would prefer that the Court would ... refer them back to the instruction and nothing else." The court's response to the jury was so limited.
¶ 32 Defendant now argues that the confusion over the verdict forms for Counts Two and Three resulted in the jury convicting him twice for the same offense. We are not persuaded.
B. Standard of Review
¶ 33 "The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused from being tried or punished multiple times for the same offense." People v. Greer, 262 P.3d 920, 924 (Colo.App.2011) ; see U.S. Const. amend. V ; Colo. Const. art. II, § 18. We review unpreserved double jeopardy claims for plain error. People v. Tillery, 231 P.3d 36, 47 (Colo.App.2009), aff'd sub nom. People v. Simon, 266 P.3d 1099 (Colo.2011). A plain error is one which is obvious and "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment." Greer, 262 P.3d at 924 (quoting People v. Miller, 113 P.3d 743, 749-50 (Colo.2005) ).
C. Analysis
¶ 34 The unit of prosecution for sexual assault on a child is "any sexual contact." Greer, 262 P.3d at 924. Incidents of sexual assault are factually distinct if they "occurred at different times, were separated by intervening events," or "were temporally distinct." Id.
¶ 35 Here, the evidence demonstrated that defendant was not convicted twice for the same offense because there were factually distinct incidents of sexual assault. During the victim's testimony, she repeatedly stated that the incidents of sexual contact with defendant-specifically the touching of her buttocks with defendant's hand and touching of her buttocks with his lap-were separated by time.
¶ 36 The possible confusion in the titles of the verdict forms is not enough to demonstrate a double jeopardy violation. The prosecutor explained during closing arguments that the predicate act for Count Two was defendant touching the victim's buttocks with his hand and for Count Three was defendant touching the victim's buttocks on defendant's lap. The special interrogatory included with Count Two further supports the conclusion that the convictions were based on factually distinct incidents of sexual assault. The final question on the interrogatory asked,
Does the jury find, beyond a reasonable doubt, that the Defendant committed the *28 offense of Sexual Assault on a Child by touching the alleged victim's buttocks while on his lap, as alleged in Count Three and did this act or acts of sexual contact take place within ten years prior to or at any time after the offense charged in Count No. 2?
(Emphasis added.) The question clearly shows that Counts Two and Three charged separate offenses involving separate conduct occurring at separate times.
¶ 37 Considering that there was sufficient evidence to support convictions for separate offenses under Counts Two and Three, we conclude that the clerical error on the verdict forms did not undermine the fundamental fairness of the trial. Accordingly, the convictions for those counts did not violate defendant's right to be free from double jeopardy.
¶ 38 The judgment is affirmed.
Judge CARPARELLI and Judge FOX concur.

Certiorari was granted on a different issue.